498 A.2d 278

**Ray B. WYATT, et ux.**

v.

**POTOMAC ELECTRIC POWER COMPANY.**

**No. 72, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Oct. 7, 1985.

Clifford B. Sobin (Ashcraft & Gerel on brief), Landover, for appellants.

James P. Salmon (Sasscer, Clagett, Channing & Bucher on brief), Upper Marlboro, for appellee.

Before GILBERT, C.J., and WEANT and GARRITY, JJ.

GILBERT, Chief Judge.

Ray B. Wyatt [1] attempted in the Circuit Court for Prince George's County to make an end run around the Workmen's Compensation Act's statutory employer provisions [2] so as to maintain an action of negligence against Potomac Electric Power Company (Pepco). Wyatt's efforts failed in the circuit court (Levin, J.). Undaunted by that defeat, Wyatt has carried the fray to this Court where he again endeavors to avoid the statutory barrier.

### The Facts

Wyatt was employed by Johnson Control, Inc., which had been hired by Pepco as subcontractor to perform certain revamping and retrofitting of the electrical control instrument system at Pepco's Chalk Point Power Plant. During the course of the renovation work, Wyatt, an electrician and welder, slipped and fell down a staircase while he was carrying a roll of welding cable. Wyatt injured his left leg, and he asserts that injury occurred because Pepco improperly designed or maintained the stair. As a result, Wyatt sued Pepco for $1,000,000, which sum was subsequently

---

1. In an amended declaration Wyatt's wife, Linda, was added as a party plaintiff for the purpose of joining her husband in a loss of consortium claim. Since the appeal is concerned primarily with Mr. Wyatt, we, for simplicity purposes, have used only his name in the text of the opinion.

2. Md.Ann.Code art. 101, § 62.

raised to $1,050,000 when the loss of consortium claim was added. Pepco asseverated that it was immune from a suit in negligence, inasmuch as it was the "statutory employer" of Wyatt at the time of the occurrence. Pepco subsequently moved for summary judgment, which was granted. This appeal ensued.

## The Law

Md.Ann.Code art. 101, § 62 provides, in pertinent part:

"When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him."

Whenever § 62 applies, the principal contractor [3] is considered the "statutory employer" of the subcontractor's employees. The employee's exclusive remedy is under the Workmen's Compensation Act, and the principal contractor is not liable in tort to the employee. *Honaker v. W.C. & A. N. Miller Development Co.*, 285 Md. 216, 221, 401 A.2d 1013, 1016 (1979) (*Honaker* II).

*Honaker* made transpicuous that § 62 applies when four factors coalesce:

1) A principal contractor

2) has contracted to perform work

3) that is part of his trade, business or occupation

---

**3.** "Principal contractor" is not a synonym for "general contractor." *See Honaker v. W.C. & A.N. Miller Dev. Co.*, 278 Md. 453, 460 n. 4, 365 A.2d 287, 291 n. 4 (1976) (*Honaker* I).

4) and has contracted with a subcontractor for the execution by or under the subcontractor of all or part of the work.

*See Honaker* I, 278 Md. at 460, 365 A.2d at 291 (1976).

Wyatt's attack is focused on *Honaker* I's fourth element, there being no dispute as to the other three *Honaker* factors. The parties agree that Pepco is a "principal contractor" who has undertaken to supply electricity to the public. Wyatt charges that the particular type of work that his immediate employer Johnson was performing for Pepco did not constitute all or part of Pepco's business. In short, Wyatt argues that Pepco's business is furnishing electricity to the public, and that Johnson was not performing any part of that undertaking.

Wyatt avers that Pepco's business is limited to the everyday activities and operations of the power plant and its related equipment, all of which serve to provide electricity to Pepco's customers.

A reading of the decisions of the Court of Appeals makes pellucid that certain functions have been held, for the purpose of § 62, to be considered necessary and essential to the "principal contractor's" business. For example, in *State, Use of Reynolds v. City of Baltimore*, 199 Md. 289, 86 A.2d 618 (1952), the work of erecting hoists was determined to be a necessary and essential part of the actual excavation of a water tunnel and, consequently, a part of the business of the defendant. Further, the *Honaker* II Court held that inasmuch as any structure must have a roof on it before it may be considered to be a house, the building of a roof was part of the business of a defendant who had contracted to build a house. (*See also W. C. & A. N. Miller Development Co. v. Honaker*, 40 Md.App. 185, 190–94, 388 A.2d 562, 566–68 (1978) for a discussion by Judge Couch for this Court of the "essential part" test.)

No Maryland case appears to have decided whether the installation of an electrical conduit at an electrical generating plant is an "essential part" of a utilities business.

Nevertheless, several of our sister states have had the occasion to consider cases that are factually similar to that at bar. The Court of Appeals of Georgia has held that the installation of such a conduit was essential to the manufacture of electricity and, therefore, the utility was a statutory employer. *Johnson v. Georgia Power Co.*, 165 Ga.App. 672, 302 S.E.2d 417 (1983), *overruled on other grounds, Modlin v. Black & Decker Manufacturing Co.*, 170 Ga. App. 477, 317 S.E.2d 255 (1984).

The Supreme Court of Kansas in *Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 231 P.2d 239 (1951), had before it a matter in which an argument was advanced almost identical to that in the instant case. There, an employee of a subcontractor was injured in a job related accident arising out of the installation of a new turbo-generator, steam boiler, and other auxiliary equipment. The employee sued the defendant utility on the ground that the installation of the equipment was not part of the trade or business of the utility, *i.e.*, transmission of electric power. The court said: "[I]t is a matter of common knowledge that steam boilers, turbines, generators and other equipment, as well as a building in which to house them, are a part of the integral equipment necessary to the operation of the business of a public utility which is engaged in the production, transmission, and sale of electricity. New buildings and new equipment whether required for replacement purposes or for increased capacity are incidents essential to the proper maintenance of such business." The *Lessley* court concluded that the construction was part of the utilities business or that it was a statutory employer, and Lessley's remedy was limited to recovery of workmen's compensation benefits.

In yet another electrical power plant case, the Fourth Circuit Court of Appeals determined that work performed on electrical equipment that was designed to control a newly installed coal-loading apparatus, was part of the defendant's business. *MacMullen v. South Carolina Electric & Gas Co.*, 312 F.2d 662 (4th Cir.1963). (*Cf. Western*

*Electric Co. v. Capes,* 164 Ga.App. 353, 296 S.E.2d 381 (1982), however, where it was held that the installation and maintenance of vending machines was *not* part of the electric company's manufacturing process.)

■ We think that the renovation work undertaken by Pepco at the Chalk Point Power Plant was essential to the operation of that plant in order to provide electricity to the public. In fact, the revamping was necessary in order for the plant to comply with federal and state pollution laws. As we see it, Pepco was Wyatt's statutory employer at the time of the accident, and, therefore, Wyatt may not successfully maintain an action in tort against Pepco.

Wyatt, additionally, asserts that the summary judgment entered against him was improper because of the existence of a genuine dispute of a material fact. Wyatt says that Pepco had little or no control over Johnson's employees. Whether that issue is disputed by Pepco matters not one whit because it does not affect the ultimate decision. Pepco was the "principal contractor" within the purview of Md. Ann.Code art. 101, § 62.

We hold, therefore, that Judge Levin properly entered judgment in favor of Pepco.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.