508 A.2d 1014

**Cyril G. ANDERSON, et ux.**

v.

**Israel BIMBLICH, et al.**

**No. 1233, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

May 16, 1986.

Andrew E. Bederman (Greenberg & Bederman, on brief), Silver Spring, for appellants.

John J. O'Neill, Jr. (Ford & O'Neill, on brief), Rockville, for appellees.

Argued before BISHOP, ALPERT and KARWACKI, JJ.

ALPERT, Judge.

In this case of first impression in Maryland,[1] we are called upon to decide whether an apartment building owner is a "principal contractor" within the meaning of the Work-

---

1. Although we have uncovered cases from other jurisdictions holding landlords to be statutory employers of maintenance men hired by independent contractors, *see Evans v. Naihaus,* 326 So.2d 601, 604 n. 2 (La.App.1976) (ordinary repair and maintenance is an essential part of rental business); *Sursum Corda, Inc. v. Cooper,* 1 Ben.Rev.Bd.Serv. 60, 63 (1974) (owner of apartment complex liable for disability benefits to maintenance man); *Viselli v. Missouri Theatre Bldg. Corp.,* 361 Mo. 280, 234 S.W.2d 563 (Mo.1950) (landlord held statutory employer of employee of window washing contractor); *cf. Gigliotti v. United*

er's Compensation laws, and thus the statutory employer of a maintenance man hired by the apartment building's management company.

This is an appeal from an order of summary judgment granted in favor of Israel Bimblich, et al.[2] (appellees) and against Cyril G. Anderson [3] (appellant). Appellant, who had earlier recovered from appellees in a Worker's Compensation case for injuries sustained on December 10, 1981, filed a "third party" tort action against appellees pursuant to Section 58 of the Worker's Compensation Act (the "Act"),[4] alleging that they were negligent in maintaining a defective and dangerous trash compactor on their property. Appellees filed a motion for summary judgment on the grounds that they were appellant's employer and that appellant's tort claim was barred by the exclusive remedy doctrine expressed in Section 15 of the Act. On May 7, 1985, the Circuit Court for Montgomery County (Judge DeLawrence Beard) granted appellees' motion.

---

*Illuminating Co.,* 151 Conn. 114, 193 A.2d 718 (1963) (landlord not statutory employer where claimant injured performing construction, not maintenance, work), we deem them unpersuasive because of differences in the applicable worker's compensation laws. *See generally* 1C A. Larson, *The Law of Workmen's Compensation* §§ 45.31(a), 49.11–12 (1982 and 1985 Cum.Supp.).

2. The order of summary judgment named Israel Bimblich, Lillian Bimblich and Smithy-Braedon Property Company as defendants.

3. Vida Anderson, Cyril's wife, joined in Count VII of the amended complaint, seeking damages for loss of consortium. As her claim is dependent on Cyril's claim, *see Miller Development Co. v. Honaker,* 40 Md.App. 185, 194–95, 388 A.2d 562 (1978), we need only address Cyril's right to recover in this case.

4. Section 58, in pertinent part, provides:
     Where injury or death for which compensation is payable under this article was caused under circumstances creating a legal liability in some person *other than the employer* to pay damages in respect thereof, the employee ... may proceed either by law against that other person to recover damages or against the employer for compensation under this article, or in case of joint tort-feasors against both....
Md.Ann.Code, Art. 101, § 58 (1985 Repl.Vol.) (emphasis added).

On appeal to this court, appellant correctly notes that if there is a genuine dispute of material fact, summary judgment may not properly be granted. Rule 2–501(e). Accordingly, he asks

> Whether the trial court improperly granted appellees' motion when there was a genuine dispute of material fact regarding the identity of appellant's employer which should have been submitted to a jury for determination?

The underlying facts are not complicated. On December 10, 1981, Cyril Anderson's right hand was amputated in an industrial accident at the Barbazon Plaza Apartments, where he was employed as a custodian. The apartment building was managed by Smithy-Braedon Property Company ("Smithy"). Appellant filed a Worker's Compensation claim, naming Smithy as his employer, because he had been hired, supervised and paid by Smithy. Smithy filed a First Report of Injury with the Worker's Compensation Commission, naming IBI Associates ("IBI") as employer. IBI was listed as employer in the First Award of Compensation and all subsequent orders issued by the Commission.

In this appeal, appellant asserts that the exact identity of the apartment building owners (the "Owners") was not ascertainable from the record before the trial court. This is the "factual dispute" that, appellant would have us hold, should have precluded the trial court from considering appellees' motion for summary judgment. Appellant's argument is without merit. First, counsel for appellees clarified for the trial court any confusion over the exact identity of the Owners.[5] Second, and more importantly, the exact

---

5. Although the Commission listed IBI as the employer—premised on their presumed ownership of the premises, appellees indicated that IBI was not the Owner. At the hearing on the motion, appellees' counsel explained that the apartment building was owned initially by Barbazon Plaza, Inc., a corporation. Prior to the subject accident, however, the corporation was dissolved and ownership was transferred to Barbazon Plaza Associates, a partnership. In discovery, appellees stated that the partners in Barbazon Plaza Associates were Mr. and Mrs. Bimblich, Leon Lopatin, Sue Heyman and Barbara Goldstein. Furthermore, a Stipulation was entered into by the parties

identity of the Owners was not a *material* fact.[6]  As Rule 2–501(e) precludes granting a motion for summary judgment only where the dispute concerns a material fact, *see King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985), the only question we must answer is whether appellees were entitled to judgment as a matter of law.

There is no dispute that, for the injuries he sustained on December 10, 1981, appellant filed for and was awarded worker's compensation under the Worker's Compensation Act.  Clearly, he was entitled to do so as § 15 of the Act provides in relevant part:

> Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury....

Section 15 further provides, however, that "[t]he liability prescribed by the past preceding paragraph *shall be exclusive."* (Emphasis added).  Having elected and recovered worker's compensation from his employer, appellant may not later sue that same employer in tort.  *Gray v. State Roads Comm'n,* 253 Md. 421, 252 A.2d 810 (1969).  *See Haynie v. National Gypsum Corp.,* 62 Md.App. 528, 490 A.2d 724 (1985); *Athas v. Hill,* 54 Md.App. 293, 458 A.2d 859 (1983), *aff'd,* 300 Md. 133, 476 A.2d 710 (1984).  *See also State v. Bennett Building Co.,* 154 Md. 159, 168, 140 A. 52 (1928) ("If an employer is within the [Worker's Compensa-

---

whereby the owners of the property were listed as Smithy and the individual partners in the Barbazon Plaza Associates partnership.

**6.** As we will explain *infra,* the relationship existing between appellant and the apartment building owners is the critical focal point in this case.  The exact identity of those owners does not affect the outcome.  It is, therefore, not material.  *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985).

tion] Act to bear its liabilities, he must remain to be accorded its immunities...."").

Even if an injured worker has recovered under the Act, he may still sue a person *other than his employer* in a third-party tort action. Art. 101, § 58 (quoted in pertinent part at n. 4, *supra*). This is what appellant did in the case *sub judice*. To succeed in this action, therefore, appellant was required to show the Owners[7] were not his employer. In their motion, appellees contended that the Owners were the *statutory* employer of appellant, relying on § 62 of the Act. We agree and shall explain our reasons.

In *Honaker v. W.C. and A.N. Miller Development Company*, 278 Md. 453, 365 A.2d 287 (1976) (*Honaker I*), the Court of Appeals was asked to consider whether the relationship of statutory employee/statutory employer, as contemplated by § 62, existed between an injured worker and the defendant in that case. Writing for the court, Judge Orth stated:

It is manifest on the face of § 62 of Art. 101, that in order to invoke its provisions there must be:

(1) a principal contractor

(2) who has contracted to perform work

(3) which is a part of his trade, business or occupation; and

(4) who has contracted with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work.

*Id.* at 459–60, 365 A.2d 287 (footnote omitted). Focusing on the first, second and fourth elements, Judge Orth explained:

As the statute speaks in terms of principal contractor and subcontractor, it clearly requires two contracts, one between the principal contractor and a third party whereby it is agreed that the principal contractor will execute

---

**7.** We emphasize that, whatever their identity, appellant was suing the Owners for maintaining a defective and dangerous trash compactor on their premises.

certain work for the third party, and another between the principal contractor and a person as subcontractor whereby the subcontractor agrees to do the whole or part of such work for the principal contractor. The definition of subcontractor and subcontract denotes the existence of two contracts.

*Id.* at 460, 365 A.2d 287. It was further explained that the contract between the principal contractor and the subcontractor must result from the original contract between the principal contractor and the third party. *Id.* at 461–62, 365 A.2d 287 (citing *State v. Bennett Building Co.*, 154 Md. 159, 140 A. 52 (1928)). As there was no evidence that the contract with the alleged subcontractor resulted from a third party contract, the *Honaker I* court reversed the trial court's holding that the defendant in that case was a statutory employer and thus immune from tort liability. *Id.* [278 Md.] at 463, 365 A.2d 287.

On remand, the trial court denied the defendant's motion for summary judgment and an appeal to this court ensued. We reversed. *See Miller Development Co. v. Honaker*, 40 Md.App. 185, 388 A.2d 562 (1978) (*Honaker II*), *aff'd*, 285 Md. 216, 401 A.2d 1013 (1979). First, in view of additional evidence that was added to the record on remand, it was clear that the subcontract had arisen out of an existing contract between the defendant and a third party. 40 Md.App. at 190, 388 A.2d 562. The three elements discussed in *Honaker I* were thus satisfied. The majority of the discussion in *Honaker II*, however, focused on the third element: whether the work subcontracted was part of the principal contractor's business. Concluding that Maryland had adopted the "essential or integral part" test,[8] we noted that the "relevant inquiry under that test is whether the

---

**8.** *See Honaker II*, 40 Md.App. at 193, 388 A.2d 562. This test was adopted in lieu of another espoused by Professor Larson: whether the subcontracted work was such as the principal contractor or employer "would ordinarily do through employees." *See* 1C A. Larson, *The Law of Workmen's Compensation* § 49.12 at 9–22 (1986).

subcontracted work is an 'essential or integral part of the principal contractor's business.'" *Id.* at 191, 388 A.2d 562.

Reviewing the undisputed facts in the case *sub judice*, it is clear that the four elements of Art. 101, § 62, as explained in *Honaker I* and *Honaker II*, are present.

In his amended complaint, appellant alleges that the Owners operated the apartment building where he was injured. He alleges further that Smithy, by written agreement, managed the apartment building for the Owners. These allegations alone satisfy the fourth element, assuming the first three are also shown. *See Honaker I*, 278 Md. at 463, 365 A.2d 287.

The first two elements are demonstrated by the clear language of the apartment building lease introduced into evidence by appellant. In pertinent part, the lease states:

> This lease, made ... by and between H.G. Smithy Property Company, a corporation (*as agents for the owner of the real estate described below*), hereinafter designated the "Landlord" and [a third party], hereinafter designated as the "tenant."

(Emphasis added). The italicized language identifies the Owners as the Landlord who has entered into a contract—the lease agreement—with a third party—for our purposes each and every tenant in the apartment building. The lease, among other things, states that

> The Landlord will deliver the premises and all common areas in a clean, safe and sanitary condition....

This language demonstrates without question that the Owners, as the Landlord of the apartment building, contracted with its tenants to maintain that building in a sanitary condition, and that *a fortiori* custodial maintenance is part of their trade, business or occupation.

The third element is likewise shown by undisputed evidence. Appellant, by affidavit, stated that he was hired by Smithy to perform custodial (janitorial) work at the apartment building. Inexorably, there is but one conclusion that can be drawn: that the Owners' obligation to maintain

sanitary conditions had been assigned, by a subcontract, to Smithy. The custodial work that appellant was hired to perform was an "essential or integral part" of the Owners' business.

As each of the four *Honaker* elements were undisputably present in the record before the trial court, the only legal conclusion it could reach was that the Owners were appellant's statutory employer.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.